# EXHIBIT 9

COMPLAINT - 42

*Law Offices
of
J. Scott Miller, P.S.*

J. Scott Miller, Attorney†
Lisa S. Mittleider, Paralegal
†Admitted Washington & Idaho

*201 W. North River Drive
Suite 305
Spokane, WA 99201-2266*

Tel. 509/327.5591 ext. 121
Email jscottmiller@jscottmiller.com

*Fax. 509/328-6436
website: www.jscottmiller.com*

## APPEAL/REVIEW

December 7, 2018

Liberty Life Assurance Co. of Boston
Attention: Appeal Review Unit
Group Benefits Disability Claims
PO Box 7213
London, KY 40742-7213

Re:    ***Kelly Moat LTD Benefits
Claim #8077199***

Dear Appeal Review Unit,

This Appeal/Review is submitted by Kelly A. Moat, an employee of Crawford and Company "Crawford"). There is no dispute that Mr. Moat is eligible for both STD and LTD benefits. He has received maximum benefits under STD insurance coverage but was improperly denied LTD benefits.

The Crawford and Company Long Term Disability Plan is self-insured. Crawford is the plan Sponsor, and Life Assurance Company of Boston is retained to provide claim administration services. However, Crawford expressly retains authority to render all final claim decisions.

1 | Page

COMPLAINT - 43

## I.    EXHIBITS

The following documents are submitted as exhibits in support of this Appeal/Review:

1. Crawford & Company Employments Records
2. Job Description – Senior Property Adjuster (01/01/2009)
3. Crawford and Company Termination Letter (10/08/2018)
4. STD Benefits Summary (05/01/2018)
5. LTD Benefits Denial letter (06/13/2018)
6. Arthritis Northwest Medical records (Sean LaSalle, M.D.)
7. Northwest Neurological[1] records (Steven Pugh, M.D.)
8. Letter from Dr. Steven Pugh (November 14, 2018)
9. Hart Family Medicine records (Mark Hart, D.O.)
10. Declaration of Kelly Moat (December 6, 2018)
11. Liberty Mutual Group Disability Income Policy GD/GF3-850-290932-01 (01/01/2013)
12. Dr. Sivakumar Memorandum (June 14, 2018)
13. Occupational Analysis/Vocational Review (05/04/2008)

## II.    FACTS

Kelly Moat was hired at Crawford and Company as a Senior Property Adjuster in November 2014. The specific job description (Job Code DB7025) is in Exhibit 2, but includes the following:

**Summary of Role:**
Under light supervision, handles all types of the most serious structural losses, resolved highly complex claims by investigating losses, negotiating settlements, presenting evidence in legal proceedings, while maintaining adequate production levels; makes sales calls when requested to do so.

Responsibilities

- Examines claims forms, policies and endorsements, client instructions and other records to determine coverages;
- Investigates claims by interviewing claimants and witnesses, obtaining official reports, by inspecting physical damage, and by comparing claim information with evidence.

. . .

**Physical Requirements:**

- The physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job.

---

[1] Northwest Neurological is now Selkirk Neurology.

COMPLAINT - 44

. . .

- Reaching and manual dexterity for operating computer keyboard.
- While performing the duties of this position, auto travel may be required
- The employee is required to extend hands and arms in various directions in order to handle files and associated paperwork; use hands/fingers in repetitive motion in keyboard usage; use hands/fingers to efficiently utilize a writing instruments.
- Ability to ascend or descent stairwells.
- Ability to climb up and on rooftops.
- Ability to climb ladders.
- Ability to maintain balance when walking on narrow, slippery, or sloping surfaces.
- Ability to stoop, kneel, crouch, crawl, stand, sit and walk, etc.
- Ability to work outdoors, exposed to all weather conditions.

. . .

(emphasis added)

Mr. Moat has been diagnosed with diabetes, for which he has been receiving treatments by Dr. Hart. He has been complaining for many months of both thumb/hand pain and bilateral neuropathy in his knees, legs and feet. On July 25, 2018 Dr. Hart obtain imaging studies that indicate mild 1st carpometacarpal[2] osteoarthritis in the right hand, and mild left 1st carpometacarpal and 1st interphalangeal osteoarthritis with moderately severe left intercarpal joint space narrowing suggesting an inflammatory arthropathy component versus sequelae of an old injury

Dr. Hart referred Mr. Moat to Dr. Pugh, on January 25, 2018 for evaluation of his dizziness, and to Dr. LaSalle, on July 2, 2018, for osteoarthritis in both hands.

In Dr. LaSalle's report to Dr. Hart dated August 16, 2018 notes that he was being seen for "pain in both thumbs and shoulders". Mr. Moat was prescribed gabapentin (400 mg, oral, 3 times daily) piroxicam (10 mg, twice daily), hydrocodone (10/325 PRN), and Feldene daily. He described bilateral pain in his thumbs, decreased sensation and dexterity in his hands, constant burning pain and discomfort in his feet making it difficult to stand or walk for prolonged periods, and progressive neuropathic pain since January 2017. Because of these disabilities, he was no longer working when he saw Dr. LaSalle.

---

[2] Note: The first carpometacarpal joint, or *CMC* joint (i.e. thumb), plays an irreplaceable role in the normal functioning of the thumb. It is recognized as the most important joint connecting the wrist to the metacarpus, and osteoarthritis is a severely disabling condition.

3 | Page

COMPLAINT - 45

Dr. LaSalle's report to Dr. Hart includes nine assessment impressions, including Type 2 diabetes mellitus with hyperglycemia and an ongoing A1c of 7.7. Dr. LaSalle's assessments conclude with the following:

> *"He does have pain in his first CMC joints bilaterally. I have recommended Tylenol 650 mg up to 4 times daily, Aspercreme, paraaffin wax bath, and Feldene 10 mg twice daily with food as needed for pain relief."*

Dr. Pugh's chart note of February 23, 2018 clearly indicates that Mr. Moat described diabetic polyneuropathy in hands and feet. He notes:

> *"Diabetic polyneuropathy producing altered proprioception, poor balance, and neuropathic pain. As I have said previously I do not see how he can safely continue with the job description as an insurance adjuster which requires him to inspect rooftops, climb ladders, and get on top of structures that are at a height. This puts him at a risk of falling."*

Dr. Pugh's letter dated November 14, 2018 states that the diagnosis is diabetic polyneuropathy that affects his proprioception and inhibits proper balance, and that this is "not a reversible condition". He is unable to negotiate uneven surfaces, use ladders, or climb on rooftops. Most importantly, after noting that property insurance adjusters are required to climb ladders and walk on roofs, Dr. Pugh states in his recent letter report:

> *"I would not, under any circumstances, endorse his return to work as an insurance inspector knowing that this is a significant part of his job description."*

## III.    SHORT TERM DISABILITY (STD)

Mr. Moat was awarded Short Term Disability (STD) benefits effective February 10, 2018 with payments beginning February 24, 2018 (Claim #7890735). Payments were exhausted after August 10, 2018. The electronic notice to the employer dated May 1, 2018 indicated "MAXIMUM DURATION/SWITCHED TO LTD".

## V.    LONG TERM DISABILITY (LTD)
### VI.

The STD claim was converted to an LTD claim and reassigned as claim #8077199. On June 13, 2018 Liberty Mutual issued a letter denying LTD benefits. Clearly, this denial was issued in total disregard for Mr. Moat's physical condition, because the letter is dated before the neurologist hired by Liberty Mutual, Dr. Sivakumar, issued his report on June 14, 2018!

4 | Page

COMPLAINT - 46

The denial seems to be based entirely on the incorrect conclusion that Mr. Moat can somehow perform the duties of a senior property adjuster without climbing ladders, walking on roofs, or the other requirements of his job as set forth in the Crawford and Company job description. An Occupational Analysis/Vocational Review found in the disability file that was dated 05/04/2018 was authored by an employee of Liberty Mutual, Debra Kaitschuck, in the Group Benefits Claims office. She notes that his job description is available for review, but then ignores the actual job duties and, instead, refers to the Dictionary of Occupational Titles (DOT) to improperly conflate the job into a hodge-podge of insurance jobs:

> *"Sample of reported job titles: Claims Representative, Claims Adjuster, Claims Examiner, Claims Analysis, Claims Specialist, Claims Manager, General Adjuster, Independent Insurance Adjuster, Litigation Claim Representative, Field Liability Generalist, Claims Manager [sic.], Claims Supervisor, Customer Care Specialist, Corporate Claims Examiner, Home Office Claim Specialist"*

Anyone in the insurance industry is well aware that these are all completely different jobs, and it is impossible to simply jump from one field to another; it is ludicrous to conclude that as a Senior Property Adjuster he is equally qualified to be any or all of these other job titles.

Similarly, the fact that part of the duties assigned to Mr. Moat included sedentary work, that he can be assigned to work on a keyboard all day, since all of the medical records confirm describes pain from osteoarthritis in both thumbs.

## VII.    TERMINATION

Because he was unable to return to work, on October 8, 2018 Crawford and Company issued a letter terminating his employment. Contrary to the language in that letter, he did not voluntarily resign. Instead, he did request reasonable accommodation but was told there were no jobs at Crawford and Company that he could perform due to the nature and scope of his disability.

## VIII.    IMPROPER CONTRACTUAL BASIS FOR DENYING LTD

The Liberty Mutual Insurance Disability Policy GD/GF3-850-290932-01 is cited in the LTD denial letter. The language of the insurance contract clearly shows that LTD benefits are due.

> "The Policy requires that to receive benefits you must meet the following definition of disability:
>
> ***"Disability" or "Disabled"***, *with respect to Long Term Disability, means:*
> *1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
>    *i. that during the Elimination Period and the next 24 months of Disability the*

COMPLAINT - 47

*Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

*ii.   thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*2.With respect to Covered Persons employed as pilots, co-pilots and crewmembers of an aircraft:* **"Disability"** *or* **"Disabled"** *means as a result of Injury or Sickness the Covered Person is unable to perform the Material and Substantial Duties of Any Occupation*

**Own Occupation**", *with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.*

**"Partial Disability"** *or* **"Partially Disabled"** *means the Covered Person, as a result of Injury or Sickness, is able to:*
*1.      perform one or more, but not all, of the Material and Substantial Duties of his Own Occupation*
*or Any Occupation on an Active Employment or a part-time basis; or*
*2.      perform all of the Material and Substantial Duties of his Own Occupation or Any Occupation on a part-time basis; and*
*3. earn between 20.00% and 80.00% of his Basic Monthly Earnings.*

The language of the policy explicitly extends LTD coverage when, "*as a result of Injury or Sickness,* [Kelly Moat]*is unable to perform the Material and Substantial Duties of his Own Occupation.*" Even using the definition in the language of the policy, "***Own Occupation***", *with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began.* It is undeniable that Mr. Moat's occupation was "Senior Property Insurance Adjuster

It is simply wrong to say that Mr. Moat's occupation is sedentary. It is clear from the job description that there are far more strenuous duties required than merely sitting in an office. For example, as indicated in the Occupational Analysis/Vocational Review report prepared by the Liberty Mutual employee, there are significant differences between the term "sedentary work" and Mr. Moat's occupation.

- The DOT requires up to 10 pounds for force occasionally and negligible force frequently. The Crawford job description requires 20 pounds occasionally and 10 pounds frequently.
- The DOT walking and standing for brief periods of time. The Crawford job description ascending/descending stairwells, climbing onto rooftops, climbing ladders, maintaining balance while walking on marrow, slippery or sloping surfaces.

COMPLAINT - 48

- The DOT says no kneeling, crouching/squatting, crawling, climbing, balancing. The Crawford job description requires stooping, kneeling, crouching, crawling, standing, sitting, walking.
- The DOT requires occasional standing, walking, bending/stooping, twisting, reaching (reaching can be reduced by moving objects within an ergonomic distance from the body). The Crawford job description requires reaching and manual dexterity for operating computer keyboard. While performing the duties of this position, auto travel may be required. The employee is required to extend hands and arms in various directions in order to handle files and associated paperwork; use hands/fingers in repetitive motion in keyboard usage; use hands/fingers efficiently to utilize a writing instrument.

In short, the Occupational Analysis/Vocational Review report prepared by the Liberty Mutual employee clearly shows that the job duties assumed to be sedentary, do not conform to the actual job duties of a Senior Property Insurance Adjuster.

## IX.     IMPROPER LEGAL BASIS FOR DENYING LTD

As Liberty Mutual is well aware, even when the definition of "own occupation" refers to the national economy rather than the specific job at Crawford, it is legally incorrect to simply describe the general requirements of a generic sedentary job. The Plan Administrator in this case has a legal duty under ERISA to show how a Property Insurance Adjuster's job can, on a national analysis, be performed as a sedentary occupation; the Plan Administrator is required to analyze how the disability impairs the employee's ability to carry out his job duties in a national economy. *McDonough v. Aetna Life Ins. Co.*, 783 F.3d 374 (1st Cir., 2015).

In other words, when reviewing the actions of the Plan Administrator a federal court will review the material duties of the employee's particular position (i.e. Senior Property Insurance Adjuster) and assess how those specific duties align with that position as it is normally performed in the national economy. *Elliott v. Metropolitan Life Ins. Co.*, 473 F.3d 613 (6th Cir. 2006). Liberty Mutual has failed in this preliminary duty in this case.

Furthermore, when relying on the Dictionary of Occupational Titles it is incumbent on the Plan Administrator to assess the disability in the context of job duties comparable to the employee's own job, not merely a generic sedentary position. *Tsoulas v. Liberty Life Assurance Co. of Boston*, 454 F.3d 69 (1st Cir. 2006). Failing to fairly articulate the contours of the "own occupation" standard (even in the context of a national economy) is a fatal failure and LTD benefits must be awarded. *Miller v. American Airlines, Inc.*, 632 F. 3d 837 (3rd. Cir. 2011).

7 | P a g e

COMPLAINT - 49

Finally, it is important to note that in many ERISA cases when the insurance policy gives the Plan Administrator discretion to evaluate a claim, the federal court will examine the actions of the Plan Administrator through the lens of a simple *abuse of discretion* standard of review. In those cases the question is whether the Plan Administrator exercised discretion arbitrarily and capriciously. *Hyde v. Hartford*, 643 F.Supp. 2d 1184 (2009).

However, Washington has an insurance regulation that prohibits giving Plan Administrators discretionary authority. WAC 284-96-012. Therefore, instead of an *abuse of discretion* standard, federal courts in Washington will review the actions of the ERISA Plan Administrator using a *de novo* standard, as outlined in *Firestone Tire & Rubber Co., v. Burch*, 489 U.S. 101 (1989). See *Landree v. Prudential Insur. Co. of Am.*, 833 F.Supp. 2d 1266, 1274 (W.D. Wash, 2011). The *Landree* approach from the Western District has also been adopted in the Eastern District. See: *Dahmen v. Liberty Mutual Group, et al*, 2:15-cv-00076-SAB (Order Granting ..., 11/08/2016).

## X.    CONCLUSION

Mr. Moat is disabled. He was receiving STD benefits and should continue receiving LTD benefits for as long as remains disabled.

Artificially arguing that he could fulfill the hypothetical requirement of a generic sedentary job is improper. The correct analysis clearly shows that there is no job on a local or national level that he can perform, when the job duties are considered in light of his own occupation which is a Senior Property Insurance Adjuster.

J. Scott Miller
Attorney for Kelly Moat

COMPLAINT - 50